```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                     JACKSON DIVISION
```

**UNITED STATES OF AMERICA**                                          **PLAINTIFF**

**VS.**                                          **CRIMINAL NO. 3:06-CR-42BS**

**TOMMY SIMS**                                                        **DEFENDANT**


### OPINION AND ORDER

This cause is before the Court on the following Motions:

1. Motion of Defendant to Reconsider, filed on May 19, 2006, under docket entry no. 21;

2. Motion of Defendant to Correct and Supplement Defendant's "Motion to Reconsider," filed on May 24, 2006, under docket entry no. 24; and

3. Motion of the Government to Reconsider ("Cross-Motion to Reconsider"), filed on June 2, 2006, under docket entry no. 25.

Having considered the Motions and Responses, the Court finds as follows:

1. The Motion of Defendant to Reconsider is well taken and should be granted;

2. The Motion of Defendant to Correct and Supplement Defendant's "Motion to Reconsider," is well taken and should be granted; and

    3.    The Cross-Motion of the Government to Reconsider is not well taken and should be denied.

### I. Factual Background and Procedural History

On May 12, 2005, Ellis Stuart, the Chief of Police of the Hazlehurst, Mississippi Police Department, received a telephone call from Rosetta Devoe. Devoe was the caretaker of Ellen Crump, a blind and elderly female who resided at 15083 Monticello Road in Copiah County, Mississippi ("the Crump residence" or "the residence"). Devoe asked Chief Stuart to come to the Crump residence to meet with her and Crump, and Chief Stuart agreed. When he arrived at the residence later that same afternoon, the two ladies explained that Crump's son, Defendant Tommy Sims, and Sims' friends had been using cocaine at the residence. The ladies also suspected that Sims was selling cocaine. While at the Crump residence, Chief Stuart observed a "crack pipe." The two ladies further conveyed that they were concerned for their safety because they believed Sims was violent and because someone had previously shot into the house. They did not believe, however, that there were any weapons in the house at that time.

Because the residence was outside the city limits of Hazlehurst and thus outside his jurisdiction, Chief Stuart reported the matter to the Copiah County Sheriff's Department ("sheriff's

department").[1]  The next day, on the morning of May 13, 2005, Billy Saul, an investigator for the sheriff's department, went to the residence to further discuss the matter with Devoe and Crump.  The ladies basically conveyed the same information to Investigator Saul that they had to Chief Stuart. While at the residence, Investigator Saul neither searched for weapons nor drugs. He did however receive a key to the residence and written consent to conduct a "no-knock" search of the premises, signed by both Crump and Devoe.

Upon leaving the Crump residence, Investigator Saul assembled a team of law enforcement officers to conduct a search of the residence. He and the other officers devised a plan for entering the house and making the search at a time when Crump and Devoe would not be at the residence, but when Sims would be. This required the officers to wait until Sims arrived at the residence after work later that afternoon. The officers were also briefed by Investigator Saul on Sims' prior criminal history, which included a 1973 conviction for assault and battery with a deadly weapon and a child molestation conviction.[2]

Sometime after 5:00 p.m. on May 13, 2005, the law enforcement team, armed with the written consent to search, proceeded to the

---

[1] Hazlehurst, Mississippi is a municipality in Copiah County, Mississippi.

[2] At a May 9, 2006, suppression hearing, Saul testified that he believed that there was probable cause to obtain a search warrant before the officers proceed to the residence. Saul further testified that there was no emergency to search the residence.

Crump residence. After fist parking at a church adjacent to the residence, the team approached the house on foot. Officer Chad Sills led the team of law enforcement officials to the front door of the residence. As Officer Sills was opening a screen door to the front door, the front door was opened by an individual later identified as Sims. Recognizing that Officer Sills and the other officers were in fact law enforcement officials, Sims attempted to slam the door shut. However, as Sims was shutting the door, Officer Sills pushed the door back in toward Sims. Sims then turned and proceeded to run down a hallway in the house. Officer Sills and the other officers entered the house, chased Sims and tackled him. Officer Sills would later testify that he entered the house because he was concerned for his and the other officers' safety.

After Sims was detained, the officers conducted a pat-down, discovering two .410-gauge shotgun shells, a crack-pipe, and $100.00 of currency on Sims' person. Officer Sills then instructed Investigator Saul, who had also entered the house, to search a closet within a few feet of where Sims was being detained. A .410-gauge shotgun was found in the closet. Sims was then placed in custody and taken to one of the sheriff's department vehicles. Thereafter, the officers searched the house and found illegal narcotics and other contraband.

Sims was indicted by a grand jury on March 8, 2006, on the following three counts: Count 1 – possession of a firearm by a

convicted felon; Count 2 – possession of ammunition by a convicted felon; and Count 3 – possession of a short-barreled shotgun.[3] On April 20, 2006, Sims moved to suppress all evidence that had been seized on May 13, 2005, including the .410-gauge shotgun and shotgun shells. The basis of the Motion to Suppress was the recent decision of the Supreme Court of the United States in Georgia v. Randolph, _ U.S. _ , 126 S.Ct. 1515, 1528, _ L.Ed.2d _ (Mar. 22, 2006), wherein the Supreme Court held that "a physically present inhabitant's express refusal of a consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant."[4]  An evidentiary hearing was held on the Motion to Suppress on May 9, 2006 ("May 9 Hearing"). After considering the briefs submitted by the parties and hearing all the evidence, the undersigned render a ruling from the bench on the Motion to Suppress ("May 9 Bench Ruling"). In its May 9 Bench Ruling, the Court determined that Sims, as an inhabitant of the Crump residence, had the right, pursuant to Randolph, to refuse the consent Crump had given the officers to search the residence and that Sims did in fact express his refusal to the warrantless search

---

[3] The .410-gauge shotgun seized during the May 13, 2005, search of the Crump residence had a barrel length of under 18 inches and overall length of under 26 inches.

[4] The May 13, 2005, search of the Crump residence occurred before Randolph was rendered. Nonetheless, the holdings of Randolph must be applied retroactively to the search. United States v. Johnson, 457 U.S. 537, 563, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982).

by attempting to slam the door.[5] However, the Court went on to hold that the officers had probable cause to secure the premises, which would have given them the right to detain Sims for a reasonable period of time while a search warrant was obtained. Ancillary to the right to temporarily detain an individual is the right to conduct a pat-down. Thus, had the officers pursued a search warrant (which they did not), they would have had a right to pat-down Sims incident to that detention. The Court therefore concluded that the two shotgun shells which were discovered during the pat-down of Sims were lawfully seized. The Court determined, however, that because Sims, as a physically present inhabitant of the house, refused to consent to a search, all other evidence recovered during the May 13, 2005, search was pursuant to an unlawful search of the subject premises. Accordingly, the Court suppressed all evidence obtained during the search, except the shotgun shells.

Aggrieved by the May 9 Bench Ruling, Sims filed a Motion for Reconsideration on May 19, 2006. In his Motion for Reconsideration, Sims contends that all evidence, including the shotgun shells, should have been suppressed because the officers did not have legal authority to enter the Crump residence to detain Sims and further because the officers did not have probable cause to search.

---

[5] In its Response to the Motion to Suppress and at the May 9 Hearing, the Government argued that Sims' attempt to slam the door was not an "express refusal of consent" as required in Randolph. The Court determined however that closing the door in Officer Seals' face was a clear, express refusal of consent by Sims.

Subsequently, Sims filed a Motion to Correct and Supplement Defendant's "Motion to Reconsider" on May 24, 2006 ("Motion to Correct"). The Motion to Correct essentially asks the Court to supplement its May 9 Bench Ruling by clarifying whether exigent circumstances were present to justify a warrantless search or alternatively, whether the law enforcement officers created exigent circumstances. On June 2, 2006, the Government responded to Sims' two Motions and also moved for reconsideration of the May 9 Bench Ruling ("Cross-Motion to Reconsider"), contending that the shotgun should not have been suppressed. The Court will now consider these pending Motions.

## II.  Analysis – Defendant's Motion to Correct

The Court will begin its analysis by first considering Sims' Motion to Correct, which requests a clarification of the May 9 Bench Ruling. Sims had stated in his earlier filed Motion to Reconsider that the Court found at the May 9 Hearing that there were no exigent circumstances that would have justified the search of the residence. But, upon reviewing the transcript of the May 9 Hearing, Sims realized that the Court only insinuated through its questioning of counsel that there were no exigent circumstances and was therefore unsure as to whether the Court made a specific finding on the issue.

Recognizing the potential ambiguity in its May 9 Bench Ruling, the Court will grant Sims' Motion to Correct and clarify its

7

ruling. The Court specifically rules that there were no exigent circumstances to excuse the warrantless search, and even if an exigency existed at the time, the law enforcement officers who conducted the raid of the Crump residence manufactured it.

### III. Analysis – Defendant's Motion to Reconsider

Having clarified its May 9 Bench Ruling, the Court will now consider Sims' Motion to Reconsider. Sims urges the Court to reconsider whether the officers had a right to enter the residence to detain him without a warrant, considering that Sims never left the confines of the residence. Sims avers that in holding that the officers had a right to detain Sims to secure the premises, the Court undoubtedly relied on Illinois v. McArthur, 531 U.S. 326, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001). In McArthur, police officers, believing that they had probable cause to search a home, prevented a resident from reentering his home while a search warrant was obtained as the officers feared that the defendant would destroy evidence if allowed to reenter. Id. at 329. Balancing the privacy interest of the defendant with legitimate law enforcement concerns, the Supreme Court held that the temporary "seizure" of the defendant in McArthur was reasonable under the circumstances. Id. at 331-32. The McArthur Court explained that exigent circumstances (destruction of evidence) contributed to the reasonableness of the

seizure. Id. at 331.[6] Because this Court found that there were no exigent circumstances, or alternatively, that the Government created any exigency, Sims argues that the holding of McArthur is inapplicable. Moreover, Sims reasons that the instant case is further distinguishable from McArthur in that, unlike the defendant in McArthur, Sims never left the privacy of his home.[7] Thus, he argues that considering there were no exigent circumstances justifying a warrantless search of the residence, the officers had no authority to enter the residence to detain him. Consequently, Sims contends that the shotgun shells were discovered as a result of an unlawful entry into the residence and should therefore be suppressed.[8]

Essentially, the Court is faced with two issues in deciding whether the evidence that was seized on May 13, 2005, including the

---

[6] In addition to the exigent circumstances, the Court in McArthur also considered the following factors in concluding that the detention was reasonable: (1) that the police had probable cause to search the residence, (2) that they used the least restrictive means possible in detaining the defendant as they did not search the residence or arrest the defendant without a warrant, and (3) the detention was limited to the time required to obtain a warrant. Id. at 332.

[7] In McArthur, the police officers encountered the defendant on the front porch and then prevented him from reentering the home, unless he was accompanied by an officers. Id. at 329.

[8] Sims also argues that the Court erred in finding that the officers had sufficient probable cause to receive a search warrant prior to their entry in the home. The Court however disagrees. Chief Stuart's observance of a crack-pipe while he was lawfully in the Crump residence would have been sufficient evidence, in and of itself, for a warrant.

shotgun shells, should be suppressed: (1) whether law enforcement officers had a right to enter the house to detain the defendant to secure the premises, absent exigent circumstances, and (2) assuming exigent circumstances were necessary to justify a warrantless entry into the residence, whether exigent circumstances did in fact exist.

### III.A. Whether the officers could lawfully enter the home without exigent circumstances

In the May 9 Bench Ruling, the Court in essence determined that, even though there were no exigent circumstances, the law enforcement officers had a right to secure the premises, which included the right to enter the home to detain Sims and incident to that detention, to conduct a pat-down. The Court therefore must first determine whether this was a proper application of caselaw.

Citing <u>McArthur</u>, the Supreme Court in <u>Randolph</u> made the following qualification of its holding that law enforcement cannot conduct a consent search of a residence where one co-tenant expressly objects to the search:

> Sometimes, of course, the very exchange of information like this in front of the objecting inhabitant may render consent irrelevant by creating an *exigency* that justifies immediate action on the police's part; if the objecting tenant cannot be incapacitated from destroying easily disposable evidence during the time required to get a warrant, a fairly perceived need to act on the spot to preserve evidence may justify entry and search <u>under the exigent circumstances exception</u> to the warrant requirement. Additional exigent circumstances might justify warrantless searches.

Randolph, 126 S.Ct. at 1525 n.6 (emphasis added; internal and end citations and parentheticals omitted). The court in Randolph went on to list "protecting the safety of the police officers" as an additional exigent circumstance, justifying a warrantless entry. Id. Further, the McArthur Court noted that the restraint employed by police officers in temporarily detaining the defendant while he was standing *outside* the home "avoided significant intrusion into the home itself." Id. at 331 (citing Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) ("searches and seizures inside a home without a warrant are presumptively unreasonable")). The Supreme Court in McArthur also commented that "[t]emporarily keeping a person from entering his home, a consequence whenever police stop a person on the street, is considerably less intrusive than police entry into the home itself in order to make a warrantless arrest or conduct a search." Id. at 336. Based on these pronouncements in Randolph and McArthur and the holding of Payton and its progeny, this Court concludes that unless exigent circumstances exist (or unless another exception to the warrant requirement is applicable), a law enforcement official has no right to enter a dwelling to detain a suspect in an attempt to secure the premises. See United States v. Richard, 994 F.2d 244, 247 (5th Cir. 1993)("if agents have no warrant and no consent, even if they have probable cause and statutory authority to arrest a suspect, they must also have exigent circumstances to enter"). The

Court therefore finds that it incorrectly determined in its May 9 Bench Ruling that law enforcement officers had the right to enter the Crump residence to detain Sims in the absence of exigent circumstances.

### III.B. Whether the exigency exception justified entry

Having determined that exigent circumstances were essential to support the warrantless entry into the Crump residence, the ultimate question becomes whether exigent circumstances existed. The Court must therefore review its initial finding that there were no exigent circumstances. In its Response to Sims' Motion to Reconsider, the Government argues that exigent circumstances were in fact present to justify the warrantless entry. Specifically, the Government contends that Officer Sills was justified in entering the house because he reasonably feared for his and the other officers' safety.

The United States Court of Appeals for the Fifth Circuit has recognized the following general circumstances as "exigent circumstances" that allow law enforcement officers to subvert the warrant requirement: (1)concern for officer safety, (2)presence of firearms, (3)risk of escape, and (4)destruction of evidence. United States v. Rico, 51 F.3d 495, 501 (5th Cir. 1995). Whether an exigency exists is a question of fact that must be reviewed under a totality of the circumstances, reasonableness analysis. United Sates v. Howard, 106 F.3d 70, 74 (5th Cir. 1997). The Court must

"review the entirety of the agents' investigative tactics, particularly those leading up to the exigency alleged to have necessitated [a search or seizure]." Rico, 51 F.3d at 501. As the Fifth Circuit opined in Rico, the review is "more akin to examining a video tape by instant replay than to examining a snapshot." Id. Because it is an exception to the warrant requirement, the Government has the burden to prove that an exigency exists. Howard, 106 F.3d at 74.

Importantly, in the case *sub judice*, there was no testimony by law enforcement officers that destruction of evidence was a concern when they entered the Crump residence. Therefore, the only potential exigency in this case is officer safety. The Government argues that this exigency arose when Sims began to run down the hallway *after* Officer Sills prevented him from closing the door. The Government urges that Sims action coupled with the officers' knowledge of his assault conviction gave the officers a legitimate reason to fear for their safety at that point.

The Court however is not persuaded that exigent circumstances existed.  Assuming *arguendo* that Officer Sills had not prevented Sims from closing the door, the door would have shut, and if the door had shut, the officers would have had no reason to believe that Sims might be running to retrieve a weapon. At that point, no exigent circumstances would have existed. If exigent circumstances did exist under this scenario, then there would have been no reason

to garner Ms. Crump's consent to search the house in the first place. Law enforcement officers could have simply entered the home based on their belief that Sims might be a threat to their safety. To say that exigent circumstances exist in this situation would be tantamount to allowing law enforcement officers to search a residence without a warrant or consent at any time, so long as they believe that someone inside the home might be armed and dangerous.

Of course, the door was not allowed to shut in the instant case. Instead, Officer Sills prevented the door from shutting by pushing his way into the home. There were no exigent circumstances until the time he pushed the door in toward Sims. He, therefore, had no right to prevent Sims from shutting the door. It was only Officer Sills' unlawful intrusion into the privacy of the home – preventing the door from shutting – that allowed him to observe Sims running down the hallway. Thus, any "exigent circumstances" arose *after* the constitutional violation had occurred and therefore would not retroactively justify the warrantless intrusion.

In determining whether exigent circumstances exist, the Court is aware that it should not "second-guess the judgment of law enforcement officers when reasonable minds may differ on the exigency of any particular situation." Howard, 106 F.3d at 76. However, the Court questions whether the officers were sincere in their belief that weapons might be on the premises. Investigator Saul was obviously not concerned about any potential danger as he

had the opportunity to search the residence that morning, but chose not to. He also testified that Crump and Devoe told him that they did not believe that there were any weapons in the house. But, even assuming the officers were reasonable in fearing for their safety prior to entering the house, the reasonable, safer course of action, in the opinion of the Court, would have been for the officers to retreat and obtain a warrant. The Court believes that the officers acted unreasonably by entering the home and pursuing Sims. This further supports a finding that exigent circumstances did not exist, or as further analyzed below, any exigency was created by law enforcement.[9]

Alternatively, if any exigent circumstances did exist, they were created by law enforcement. When faced with a possible manufactured exigency, the Court must consider "first whether the officers deliberately created the exigent circumstances with the bad faith intent to avoid the warrant requirement, and second, even if they did not do so in bad faith, whether their actions creating the exigency were sufficiently unreasonable or improper as to preclude dispensation with the warrant." United States v. Gould, 364 F.3d 578, 590 (5th Cir. 2004). There is no evidence in the record of any bad faith on the part of the law enforcement officers. The Court must therefore look to the second inquiry set

---

[9] The Court notes that in many published opinions, the analysis of whether exigent circumstances exist or whether exigent circumstances were manufactured by law enforcement is blurred.

forth in Gould – whether the tactics employed by the law enforcement officers were unreasonable. In making this determination, the Court is reminded that it must look at more than just a "snapshot" of the scene. It must also consider the reasonableness of the actions of the officers leading up to the exigency. Rico, 51 F.3d at 501.

During the May 9 Hearing, Investigator Saul testified that he believed that there was sufficient probable cause to obtain a warrant before the officers went to the Crump residence. He also stated that the impending search of the premises was not an emergency. Thus, there was more than enough time for a warrant to be obtained before the officers proceeded to the Crump residence.

Moreover, Investigator Saul was actually inside the Crump residence on the morning of May 13, 2005. He admitted at the May 9 Hearing that he did not search for weapons while inside. The Court believes that Investigator Saul could have easily dispelled any concern of weapons on the premises by searching the home that morning. The officers also knew when Sims was due to return to the residence after work. They could have detained Sims before he entered the house and thereby prevented any exigent circumstances that might arise from his being in the house. The Court therefore finds that the officers acted unreasonably under the circumstances and thus are responsible for any exigent circumstances that were present.

Upon a second review of the evidence presented at the May 9 Hearing, the Court again finds that the Government has failed to prove that the exigent circumstances exception justified the officers' entry into the Crump residence. Because there were no exigent circumstances or alternatively, because there was a manufactured exigency, the Court concludes that the law enforcement officers unlawfully entered the Crump residence without a warrant. It follows that without authority to enter the residence, the officers had no right to do a pat-down of Sims. The shotgun shells that were the fruit of the unlawful pat-down should therefore be suppressed.

Accordingly, Sims' Motion to Reconsider is well taken. The Court reconsiders Sims' Motion to Suppress and finds that all evidence, including the two .410-gauge shotgun shells, should be suppressed.

**IV. Analysis – Cross-Motion to Reconsider of the Government**

The Government also moves to have the Court reconsider its ruling that the shotgun was seized pursuant to an unlawful search of a nearby closet. Relying on <u>Chimel v. California</u>, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Government argues that the officers had the right to search, incident to their detention of Sims, the closet where the gun was found. This argument however presumes that the detainment of Sims was lawful. Seeing that the Court determined *supra* that Sims' detention was

invalid, the basis for the Government's motion is now moot. Accordingly, the Cross-Motion of the Government to Reconsider must be denied.

### V. Conclusion

Based on the holdings presented above:

IT IS THEREFORE ORDERED that the Motion of Defendant Tommy Sims to Reconsider [docket entry no. 21] is hereby granted. Upon reconsideration of Defendant's Motion to Suppress [docket entry no. 10], the Court finds that the Motion to Suppress should be granted in *toto*. The Court hereby suppresses all evidence seized at 15083 Monticello Road in Copiah County, Mississippi, on May 13, 2005.

IT IS FURTHER ORDERED that the Motion of Defendant to Correct and Supplement Defendant's "Motion to Reconsider" [docket entry no. 24] is hereby granted.

IT IS FURTHER ORDERED that the Motion of the Government to Reconsider [docket entry no. 25] is hereby denied as moot.

SO ORDERED this the 21st day of June, 2006.

                                          s/ William H. Barbour, Jr.
                                        UNITED STATES DISTRICT JUDGE

blj